CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
MAR 07 2007
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:06CR00057-3 |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| JAMIE FRANCIS HURST, | ) | |
| | ) | |
| | ) | By: B. WAUGH CRIGLER |
| Defendant. | ) | U.S. MAGISTRATE JUDGE |

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3) and upon the defendant's consent, this case was referred to the undersigned to conduct a plea hearing.

**DEFENDANT'S RESPONSES TO RULE 11 INQUIRY**

The Grand Jury has returned a multiple count Superseding Indictment ("Indictment") charging defendant in Count One with willfully and knowingly combining, conspiring, confederating and agreeing together with others known and unknown to the Grand Jury, to commit the following offenses against the United States, to wit: to distribute five grams or more of a mixture or substance containing cocaine base, also known as "crack", a Schedule II controlled substance in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(B)(iii), all in violation of Title 21, United States Code, Section 846.

On February 27, 2007, a plea hearing was conducted before the undersigned, and the defendant entered a plea of guilty to Count One of the Indictment pursuant to a plea agreement between defendant and the government. At this hearing the defendant was placed under oath and testified that her full legal name is Jamie Francis Hurst, she was born on September 12, 1984, and she graduated from high school and attended two and a half years of college. The defendant stated that she can read, write, and understand the English language. The defendant stated that she was fully aware of the nature of the charges against her and the consequence of pleading guilty to those

charges. The defendant further testified that she was not under the influence of alcohol, medicine, or any drug. The defendant stated that she had no other physical or mental condition which impaired her ability to understand the nature of the proceedings being held.

The defendant testified that she had received a copy of the Indictment pending against her and that she had fully discussed the charges therein, and her case in general, with her counsel. She also testified that she had read the plea agreement in its entirety and had discussed the plea agreement with her counsel before signing the agreement. She stated that she understood the terms of the agreement and that the document presented to the court set forth her agreement with the government in its entirety. The defendant specifically testified that she understood that under the terms of the agreement she was waiving rights to appeal or to collaterally attack her conviction or sentence. The defendant agreed that she was waiving her right to have a jury determine beyond a reasonable doubt the facts alleged in Count One, including any facts related to sentencing. The defendant's counsel stated that he had reviewed each of the terms of the plea agreement with the defendant and was satisfied that she understood those terms.

The defendant stated that she was pleading guilty of her own free will because she was, in fact, guilty of the offense charged. The defendant also stated that no one had made any promises other than those contained in her agreement with the government, or made any assurances or threats to her in an effort to induce her plea. The defendant testified that she understood that the offense with which she is charged is a felony and that, if her plea is accepted, she will be adjudged guilty of that offense. Moreover, the defendant testified that she understood she will be required to pay a mandatory assessment of $100

The defendant was informed that the maximum possible penalty provided by law for Count One is forty years imprisonment, a $2,000,000 fine, and a period of supervised release. The

2

defendant was also informed that the mandatory minimum sentence for Count One is five years imprisonment. In exchange for her guilty plea, the government agreed not to file an enhancement pursuant to Title 21, United States Code, Section 851.[1]

The defendant was informed that under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case. The defendant was then informed that, in light of the United States Supreme Court's decision in *United States v. Booker*, 125 S.Ct. 738 (2005), the sentencing guidelines are no longer mandatory but that the sentencing judge may apply them in an advisory fashion in determining a reasonable sentence. The defendant testified that she and her counsel had discussed how the sentencing guidelines might apply in her case. The defendant also testified that she understood that the court would not be able to determine the applicable guideline range, for advisory purposes, until after a presentence report had been prepared and both parties had been given an opportunity to challenge the reported facts and the application of the guidelines. She stated that she understood that the eventual sentence imposed may be different from any estimate her attorney had given her and that the court has the authority to issue a sentence that is either higher or lower than that called for by the guidelines, so long as the sentence is not greater than the statutory maximum for the offense to which the defendant is pleading guilty.

The defendant stated that she understood that, contingent upon her acceptance of responsibility and continued cooperation in the sentencing process, and fulfillment of her duties under the plea agreement, the government will recommend a two-level (2) reduction under USSG

---

[1] The defendant was informed that if the enhancement were filed, the mandatory maximum sentence, the mandatory minimum sentence, and the maximum fine for Count One would all be increased.

§ 3E1.1(a) for acceptance of responsibility, and if she meets the listed criteria, the government agrees that she should be granted an additional one-level (1) reduction under USSG § 3E1.1(b). The defendant testified she and the government had agreed that for purposes of USSG § 2D1.1, she should be held responsible for the drug weight of more than 5 grams but less than 20 grams of cocaine base, or "crack" cocaine. The defendant was informed that the government agreed to recommend that she receive a sentence within the guidelines range. Also, the defendant was informed that she could request a sentence below the guidelines range; however, the government would object to any downward departure. The defendant also stated that she understood that the government is under no obligation to file a motion for substantial assistance, but that to the extent the government does exercise such discretion in this regard, she must provide assistance in a manner set forth in the plea agreement. The defendant stated that she understood that a determination as to whether she had provided "substantial assistance" was a matter within the discretion of the United States Attorney's Office. The defendant stated that she knew that parole had been abolished and that if she is sentenced to prison she will not be released on parole but on supervised release, a violation of which could result in additional incarceration. The defendant testified that she understood that she had the right to a trial by a jury, in addition to the following rights, which will be waived or given up if her guilty plea is accepted:

1. The right to plead not guilty to any offense charged against her;
2. The right at trial to be presumed innocent and to force the government to prove her guilt beyond a reasonable doubt;
3. The right of assistance of counsel at trial and in any subsequent appeal;
4. The right to see, hear and cross-examine witnesses;
5. The right to call witnesses to testify in her own behalf and to the issuance of subpoenas or compulsory process to compel the attendance of witnesses;
6. The right to decline to testify unless she voluntarily elected to do so in her own defense;
7. The right to a unanimous guilty verdict; and

8. The right to appeal a guilty verdict.

The defendant also testified that she understood that if she is adjudged guilty of the charges against her, she may be deprived of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess a firearm.

The defendant stated that she was fully satisfied with the advice and representation given to her in this case by her counsel. The defendant testified that she understood the possible consequences of her plea and the consequences of breaching any term of the plea agreement. The defendant asked the court to accept her plea of guilty to Count One of the Indictment.

**THE GOVERNMENT'S EVIDENCE**

The defendant waived her right to have the government's Factual Summary read in open court and had no objection to the Summary. The Factual Summary having been filed in open court, the evidence presented therein regarding the offense charged is as follows:

The confidential informant in this case was prepared to testify that in May of 2006, Jamie Hurst told the informant that she, Ms. Hurst, had introduced her boyfriend Robert Williams to Christopher Robinson, and that by late spring or early summer of that same year, Robinson was supplying Williams with cocaine and that Williams was in turn selling it. By this time, Williams had moved into Ms. Hurst's apartment at 90 Summer Crest Apartments, which is located in the city of Waynesboro. When the informant inquired about getting some cocaine, Ms. Hurst gave the informant Williams' cell phone number so that the informant could deal directly w/Williams.

The informant then made two controlled buys for gram quantities of powder cocaine from Robert Williams; on July 1, and July 11, 2006, respectively. For each of these buys, prior to purchasing the cocaine, the informant met with law enforcement officers at a pre-determined location where the

5

informant was searched with negative results for contraband and money, and in turn was provided with "buy" money.

On July 1st, the informant went to the parking lot of Carman Avenue Apartments in the city of Waynesboro to wait for Williams. A short time after the informant arrived, law enforcement officers were able to observe Robert Williams arrive in a car that was being driven by Jamie Hurst. When they arrived, Williams exited the car he was in and got into the vehicle the informant was in, and then sold the informant approximately 3 grams of powder cocaine for $300, an arrangement that Williams and the informant had made prior to meeting one another. Williams then left, and the informant then returned to a pre-determined location where the informant turned over the suspected cocaine to law enforcement. The suspected cocaine was sent off for analysis at the DEA laboratory located in Largo, Maryland. The analysis confirmed that the substance purchased by the informant from Williams on July 1st was 1.8 grams of powder cocaine.

On July 11th, the informant again met with law enforcement officers at a pre-determined location where the informant was searched with negative results for contraband. The informant had $75.00 of personal money which was confiscated to ensure no "side" deals were done. Then, consistent with the arrangement the informant had worked out with Robert Williams, the informant was given $500 of "buy" money for the purchase of six grams of powder cocaine. The informant was also equipped with a digital recording device and a body wire so that officers could both record and listen in real time to the conversations between the informant and Williams. The purchase was to take place at the apartment of Jamie Hurst, located at 90 Summer Crest Apartments in Waynesboro. When the informant arrived, Williams and Hurst were not there. The informant called Williams and was told that he and Hurst were on their way. Upon arriving, the informant and the law enforcement officers who

6

had the informant under surveillance, noticed that Williams and Hurst were accompanied by Christopher Robinson and an unidentified female. All four of them and the informant then went into Ms. Hurst's apartment. According to the informant, once inside, Williams took the informant into a bedroom and gave the informant 6 bags of suspected powder cocaine; the informant in turn gave Williams the previously agreed-upon $500. The informant then left and returned to a pre-arranged location where the informant turned over the suspected cocaine, which in turn was sent off for analysis. Laboratory tests confirmed that the substance the informant had purchased from Williams was in fact 3.1 grams of powder cocaine. The informant was paid $100 for each of the above-referenced buys, excluding the $75 that was returned to the informant following the second buy.

Finally, on July 22, 2006, the informant made contact again with Williams – this time for the purpose of buying an ounce of crack cocaine for $1000. Williams instructed the informant to meet the informant at Ms. Hurst's apartment, located at 90 Summer Crest Apartments. As before, prior to making the buy, the informant met law enforcement officers at a pre-arranged location where the informant was searched with negative results for contraband and money. The informant was then provided with $1000 of "buy" money by law enforcement. Prior to entering the apartment, the informant handed the $1000 of "buy" money to Williams and then followed Williams into Hurst's apartment. Williams then went into a bedroom in the apartment, the informant was following Williams, but stopped briefly to talk with Ms. Hurst and another unidentified female. The informant then entered the bedroom where the informant observed Christopher Robinson counting out the "buy" money. While Robinson was doing that, Williams was weighing the suspected crack cocaine on a set of scales, and watched until the scale settled on 27 grams. At this point, Williams placed the crack cocaine into a small toy treasure box that Williams had taken from the informant's vehicle. Williams gave the

7

informant $50 of the "buy" money back, due to the amount being just shy of an ounce. Once Robinson was done counting the money, he approached the informant and shook the informant's hand and left the room. The informant left shortly thereafter and met with law enforcement agents who, again, pursuant to standard operating procedures, searched the informant and the informant's vehicle with negative results for contraband or additional monies. They seized hold of the suspected crack cocaine which was subsequently sent off for analysis. The analysis, done by a forensic chemist with the D.E.A. lab in Largo, Maryland, confirmed that the substance contained cocaine base, and that the amount of cocaine base was 20.1 grams.

All of the aforementioned events took place in the Western District of Virginia.

**FINDINGS OF FACT**

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

1. The defendant is fully competent and capable of entering an informed plea;

2. The defendant is aware of the nature of the charges and the consequences of her plea;

3. The defendant knowingly and voluntarily entered a plea of guilty to Count One of the Indictment; and

4. The evidence presents an independent basis in fact containing each of the essential elements of the offense to which the defendant is pleading guilty.

**RECOMMENDED DISPOSITION**

Based upon the above findings of fact, the undersigned RECOMMENDS that the court accept the defendant's plea of guilty Count One of the Indictment and adjudge her guilty of that offense. The undersigned further DIRECTS that a presentence report be prepared. A sentencing hearing hereby is

8

scheduled for May 22, 2007 at 11:00 a.m. before the presiding District Judge in Harrisonburg. If this hearing date and time are not suitable, the parties are directed to contact the presiding District Judge's scheduling clerk.

**NOTICE TO PARTIES**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C): Within ten days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. The presiding District Judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The presiding District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the undersigned. The judge may also receive further evidence or recommit the matter to the undersigned with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the presiding United States District Judge.

The Clerk is hereby directed to send certified copies of this Report and Recommendation to all counsel of record.

ENTERED: /s/ _____
United States Magistrate Judge

March 7, 2007
Date